In the District Court of the United States
For The District of South Carolina
BEAUFORT DIVISION

| | |
|---|---|
| Kellis Djon Jackson, #13872-083,  ) | Civil Action No. 9:07-1317-RBH-GCK |
| )  | |
| Plaintiff,  ) | |
| )  | |
| vs.  ) | **REPORT AND RECOMMENDATION** |
| )  | **OF THE MAGISTRATE JUDGE** |
| Steve LaBier and Scott Schleder,  ) | |
| )  | |
| Defendants.  ) | |
| )  | |

## I.  INTRODUCTION

The Plaintiff, Kellis Djon Jackson ("Plaintiff" or "Jackson"), is an inmate now housed in the Federal Correctional Institution ("FCI") in Milan, Michigan. The Plaintiff has brought this 42 U.S.C. § 1983 action against the defendants, Steve LaBier ("LaBier"), Unit Manager, FCI Estill, South Carolina, and Scott Schleder ("Schleder"), Discipline Hearing Officer, FCI Jesup, Georgia. (Collectively, LaBier and Schleder will be referred to hereinafter as the "Defendants".).

Pursuant to 28 U.S.C. § 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(d), D.S.C., the undersigned United States Magistrate Judge is authorized to review all pretrial matters in prisoner cases filed under 42 U.S.C. § 1983, and submit findings and recommendations to the District Court.

## II.  *PRO SE* COMPLAINT

The Plaintiff is a *pro se* litigant, and thus his pleadings are accorded liberal construction. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (*per curiam*); *Estelle v. Gamble*, 429 U.S. 97 (1976); *Haines v. Kerner*, 404 U.S. 519 (1972); *Loe v. Armistead*, 582 F. 2d 1291 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir.), *cert. denied, Leeke v. Gordon*, 439 U.S. 970 (1978). Under established local procedure in this judicial district, a careful review has been made of the *pro se* Petition herein pursuant to the procedural provisions of

the Anti-Terrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, Title I, § 104, 110 Stat. 1214.  This review has been conducted in light of the following precedents: *Denton v. Hernandez*, 504 U.S. 25 (1992); *Neitzke v. Williams*, 490 U.S. 319, 324-25 (1989); *Haines v. Kerner*, 404 U.S. 519 (1972); *Nasim v. Warden, Maryland House of Correction*, 64 F.3d 951 (4th Cir. 1995) (*en banc*), *cert. denied*, 516 U.S. 1177 (1996); *Todd v. Baskerville*, 712 F.2d 70 (4th Cir. 1983).

  *Pro se* pleadings are held to a less stringent standard than those drafted by attorneys. *Hughes*, 449 U.S. 5 (1980).  Even under this less stringent standard, however, the *pro se* complaint nonetheless may be subject to summary dismissal.  The mandated liberal construction afforded to *pro se* pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so, but a district court may not rewrite a petition to include claims that were never presented.  *Barnett v. Hargett*, 174 F.3d 1128 (10th Cir. 1999).  Likewise, a court may not construct the plaintiff's legal arguments for him (*Small v. Endicott*, 998 F.2d 411 (7th Cir. 1993)) or "conjure up questions never squarely presented" to the court.  *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985), *cert. denied*, 475 U.S. 1088 (1986).  The requirement of liberal construction, however, does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a federal district court.  *Rice v. National Security Council*, 244 F.Supp. 2d 594, 596 (D.S.C. 2001), *citing Weller v. Dep't of Social Services*, 901 F.2d 387 (4th Cir. 1990).  Such is the case with the present complaint.

## III. FACTUAL BACKGROUND

The Plaintiff has filed a verified Complaint[1] in which he alleges the Defendants violated his right to access the courts, retaliated against him for exercising his constitutional rights, and violated his right to due process by filing false charges against him for exercising his constitutional rights. As relief, Plaintiff asks the Court to order the Defendants to expunge the disciplinary action from his record, award him compensatory damages of $30,000.00 as the actual market value of his writ of habeas corpus, award him compensatory damages of $5,120,000.00 for the delay in initiating a meritorious writ of habeas corpus, and award him punitive damages of $200,000.00. This Court construes Plaintiff's complaint as a civil action brought pursuant to *Bivens v. Six Unknown Named FBI Agents*, 403 U.S. 388 (1971), with jurisdiction under 28 U.S.C. § 1331.

This case stems from events that occurred on June 13, 2006, when Plaintiff entered LaBier's office at FCI Estill and asked that copies be made for a court action he planned to file.[2] [Defendants' Exhibit #2, Affidavit of Steve LaBier, ¶3]. Plaintiff alleges that he told LaBier he was indigent and unable to pay for the copies. [Complaint at p. 2]. LaBier told Plaintiff that staff could make the copies and he would have to pay for them if it were determined that Plaintiff was not indigent. [Defendants' Exhibit #2, Affidavit of Steve LaBier, ¶3]. Plaintiff left his legal papers with LaBier to be copied. [Id.].

On June 14, 2006, copies of Jackson's legal papers were made. [Defendants' Exhibit #2, Affidavit of Steve LaBier, ¶4]. Jackson had wanted photocopies made of 148 pages; he

---

[1] In this Circuit, verified complaints by *pro se* prisoners are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir.1991). The Plaintiff has filed a verified Complaint. Therefore, the undersigned has considered the factual allegations set forth in the verified Complaint in issuing a recommendation in this case.

[2] *See* Plaintiff's Complaint [1] at p. 2., referring to his *habeas corpus* action styled as *Jackson v. United States of America et al*, Civil Action 9:06-cv-02048-RBH-GCK.

had requested 4 sets of copies which resulted in 592 copies being made.  [*Id*.].  The cost of each copy was 15 cents (to account for the cost of the paper, equipment, and staff time) which meant that the total cost of the copies was $88.80.  [*Id*.].

That same day, Jackson returned to LaBier's office to retrieve his copies.  LaBier told Plaintiff that he needed to sign a BP-199 Form (Request for Withdrawal of Inmate Personal Funds) for $88.80.  [Defendants' Exhibit #2, Affidavit of Steve LaBier, ¶5].  Jackson told LaBier he did not have the money to pay for the copies.  [Defendants' Exhibit #2, Affidavit of Steve LaBier, ¶5; Complaint at 2].  Labier told Jackson he could sign the form and the money would be withdrawn later when he had sufficient funds in his account.  [*Id*.].  Jackson refused to sign the form [Complaint at 2] and LaBier informed Jackson he would not receive the copies.  [Defendants' Exhibit #2, Affidavit of Steve LaBier, ¶5; Complaint at 2].  Plaintiff told LaBier that 28 C.F.R. § 543.10 allowed "free legal copies" to be provided by the Warden upon a showing of indigency.  [Complaint at 3].  Plaintiff contends that LaBier told him that if he did not sign the BP-199 form, LaBier would write an Incident Report against him for violation of an institutional rule.  [*Id*.]  At this point, Jackson asked LaBier to return his original documents, but LaBier refused, even after Plaintiff told LaBier that by keeping his legal documents, LaBier was denying Plaintiff access to the courts.  [Complaint at 3].  LaBier threatened to put Plaintiff in institutional segregation.  [Complaint at 3].  LaBier states that he did, in fact, return the originals to Plaintiff but did not give him the 592 copies that had been made.  [Defendants' Exhibit #2, Affidavit of Steve LaBier, ¶5].  Plaintiff states he left LaBier's office [Complaint at 3], but LaBier claims he returned a few minutes later and began to argue with LaBier.  [Defendants' Exhibit #2, Affidavit of Steve LaBier, ¶6].  Jackson stated that LaBier could not keep the copies and LaBier had no authority to charge him for the copies.  [*Id*.].  Labier told Plaintiff he was wrong, and Plaintiff continued to argue with LaBier.  [*Id*.]. LaBier then informed Plaintiff that the conversation was over and he needed to leave the office, and Plaintiff did so.  [*Id*.].

On June 15, 2006, LaBier prepared an incident report charging Plaintiff with Stealing (Code 219) and Insolence (Code 312). [Defendants' Exhibit #2, Affidavit of Steve LaBier, ¶8]. The charged violations were based on (1) LaBier's statement that Plaintiff had been advised that non-indigents were required to pay for copies, but when it was determined he was not indigent, he refused to pay for the copies, and (2) Plaintiff's argumentative behavior when LaBier attempted to work with Plaintiff in making payments at a later date. [*Id.*]. Plaintiff contends that the Incident Report was filed by LaBier to retaliate against Plaintiff's attempts to exercise his right to access to the court in the Habeas Action; Plaintiff contends that LaBier confiscated the original Habeas Action pleadings, which caused Plaintiff subsequently to file an inferior product in the Habeas Action. [Complaint at 3-4]. Plaintiff further contends that LaBier continued a pattern of retaliation and hindered his access to the courts by denying Plaintiff the notary services he needed. [Complaint at 4]. Plaintiff also claims substantive due process violations as a result of LaBier's filing of false charges in retaliation to Plaintiff's exercise of constitutionally protected rights. [*Id.*]

On July 13, 2006, Defendant Schleder, Discipline Hearing Officer, sent a memorandum to Plaintiff stating he had reviewed the incident report as written and had determined Plaintiff's conduct more closely reflected the prohibited act of Conduct which Disrupts or Interferes with the Security or the Orderly Running of the Institution (Code 399, most like Code 313, Lying or Providing a False Statement to a Staff Member). [Defendants' Exhibit #3, Affidavit of Scott Schleder, ¶5]. This memorandum served as notice that Plaintiff was being charged with a Code 399 offense, and that the Code 219 and Code 312 charges were being dropped. [*Id.*].

On July 20, 2006, Schleder conducted Plaintiff's discipline hearing for the charge of Conduct Which is Disruptive to, or Interferes with the Security or Orderly Running of the Institution. [Defendants' Exhibit #3, Affidavit of Scott Schleder, ¶6]. During this hearing, Plaintiff was provided with a staff representative of his choosing, and he was provided with

an opportunity to provide an oral and a written statement in his defense. [*Id*.]. After weighing the evidence provided by both Plaintiff and LaBier, Schleder found, based on the greater weight of the evidence, that Plaintiff had committed the prohibited act as charged. [*Id*., ¶7]. Schleder sanctioned Plaintiff with a loss of commissary privileges for 4 months as a result of his conduct. [*Id*.]. Plaintiff was provided with a copy of the Discipline Hearing Officer Report which set forth all of the evidence reviewed in his case, and a written explanation for the sanctions imposed. [*Id*.]. The Discipline Hearing Officer Report specifically indicates that the evidence relied upon was comprised of the (1) incident report, (2) investigation, (3) Program Statement 1315.07, (4) copy of inmate account information, and (5) memorandum from Unit Manager LaBier. [*Id*., ¶9]. Neither Plaintiff's original legal document or copies of the document were used as evidence in his discipline hearing. [*Id*.]. Schleder never saw or had possession of Plaintiff's original legal documents. [*Id.*].

## IV.  PROCEDURAL HISTORY

On May 1, 2007, Plaintiff commenced this *Bivens* action against the Defendants.[3] [1] In response, the undersigned issued an Order on July 3, 2007 directing the issuance of summonses, and directed the Defendant to file an answer to the complaint. [13] The Defendants were served, and on August 29, 2007, their counsel filed a motion for summary judgment.[4] [25]

On September 4, 2007, the undersigned issued an Order, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), which notified the Plaintiff of the Defendant's motion for summary judgment and the possible consequences if Plaintiff failed to adequately respond to the Defendants' Motion within thirty-four (34) days. [26] On October 10, 2007, the

---

[3] Should a limitations issue arise in this action, Plaintiff has the benefit of the holding in *Houston v. Lack*, 487 U.S. 266 (1988). *See* this court's Order [5] filed on April 25, 2007.

[4] The court's review of the docket sheet in this action indicates that an answer was not filed on behalf of the Defendants.

undersigned issued an Order directing the Plaintiff to respond to the Defendants' motion for summary judgment within twenty (20) days. [28]  On October 25, 2007, Plaintiff filed a motion to stay proceedings on the grounds that he was going to be transferred to another federal institution.  [30]  The Defendants responded on October 30 and stated to the Court that it appeared to the Defendants that the Plaintiff's request was more properly characterized as a motion to enlarge time, but that the Defendants did not object to the Plaintiff having additional time to respond to the Court's *Roseboro* Order.

On December 13, 2007, an order was issued by the Court giving the parties five days to inform the court of Plaintiff's current location.  [33]  On December 17, 2007, Plaintiff filed his notice of change of address and also filed a withdrawal of his motion to stay.  [36; 37]  On December 26, 2007, the undersigned issued allowing the Plaintiff until January 9, 2008, to file a response to the Defendants' motion for summary judgment.  [40]

Thereafter, the Plaintiff filed a response in opposition to the Defendants' motion for summary judgment[5] and a motion for summary judgment.  [44; 46]  The Defendants filed a response in opposition to Plaintiff's motion for summary judgment and a reply to Plaintiff's response in opposition to Defendants' motion for summary judgment.  [49; 50]

Thus, pending before the court are two (2) motions:  the Defendants' motion for summary judgment [25] and the Plaintiff's motion for summary judgment [46].

## V.  ANALYSIS

### A.  Whether Plaintiff Exhausted his Administrative Remedies
### Prior to Filing this Action

As a threshold matter, the court must address whether the Plaintiff has exhausted his administrative remedies prior to filing this action.  Section 1997e(a) of the Prison Litigation Reform Act ("PLRA") provides that "no action shall be brought with respect to prison

---

[5] The envelope was postmarked on January 9, 2008.

conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  The Defendants concede that the Plaintiff properly exhausted his administrative remedies prior to filing this action[6] and therefore the court will turn to the merits of the case.

### B.  Plaintiff's Allegation that he was Denied Access to the Courts

It is well settled that inmates have a right of access to the courts to give them a reasonably adequate opportunity to present their claims.  *Bounds v. Smith*, 430 U.S. 817, 825, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977).  Such access must be "adequate, effective and meaningful."  *Id*. at 822, 97 S.Ct. 1491.  To state a claim of violation of this right of access, a prisoner must show some interference with his right or some deficiency in the legal resources available to him, as well as evidence of actual injury or specific harm related to litigation.  *Lewis v. Casey*, 518 U.S. 343, 349, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996) (a prisoner must show some actual injury resulting from a denial of access in order to allege a constitutional violation).  "Actual injury requires the inmate 'demonstrate that his nonfrivolous, post-conviction or civil rights legal claim has been frustrated or impeded.'"  *Campbell v. Johnson*, 465 F.Supp.2d 597, 603 (E.D. Va. 2006), *citing Jackson v. Wiley*, 352 F.Supp.2d 666, 679-80 (E.D. Va. 2004); *cf., Strickler v. Waters*, 989 F.2d 1375, 1382-85 (4th Cir.), *cert. denied*, 510 U.S. 949, 114 S.Ct. 393, 126 L.Ed.2d 341 (1993) (specific harm or prejudice must be shown as a result of the allegedly denied access).  A claim for failure to provide access to the courts must be pleaded with specificity.  *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996).

Assuming that Plaintiff's claim is true, and that LaBier confiscated Plaintiff's original legal document, he still has failed to state a valid claim for denial of access to the court.  All

---

[6]     *See* Defendants' motion for summary judgment [25] at pp. 2-4.

of the cases Plaintiff relies on to argue his cause were cases which were decided prior to Supreme Court announcing the "actual injury element" discussed in *Lewis*. As noted in *Lewis*, to establish a claim of denial of access to the courts, a prisoner must allege actual injury or specific harm resulting from denial. *Strickler v. Waters*, 989 F.2d 1375, 1383-84 (4th Cir. 1993). "The requirement of actual injury has been held to mean the deprivation of legal materials actually prevented plaintiff from meeting deadlines, or otherwise prejudiced him in any pending litigation, or actually impeded his access to the courts." *Oliver v. Powell*, 250 F.Supp.2d 593, 601 (E.D.Va. 2002).

As the basis of his claim that he has been denied access to the Court, Plaintiff alleges LaBier confiscated the original *Habeas* action he had prepared. Plaintiff further alleges this confiscation forced him to re-research and redraft another document, resulting in an inferior product devoid of arguments and supporting authorities that he was not able to replicate from the original document. [Complaint at 4]. Legally, Plaintiff's claim that the second writ was inferior to the first is insufficient to state a claim. First, Plaintiff's allegation is a bald, abstract claim, without reference to any particular legal deficiency in the second writ. A prisoner cannot rely on conclusory allegations, but must be specific so as to avoid adjudication of trivial claims of deprivation. *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1991). Moreover, the right to access to the courts is not a guarantee of the right to litigate effectively, but of a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts. *Jones v. Stansberry*, No. 5:06-CT-3012-D, 2006 WL 2673468 (E.D.N.C. April 28, 2006).

The undersigned has examined the docket, and the Judgment by the District Court, and finds it apparent that Plaintiff had full access to the court, that he received a ruling on the merits of his writ finding that he was not entitled to the relief sought, and that this was the third time he had attempted to litigate the same issue. *See Kellis Djon Jackson v. United States, et al.*, No. 9:06-cv-02048-RBH. On July 17, 2006, Mr. Jackson filed his writ of

habeas corpus, in addition to a Motion for Hearing and Notice of Praecipe, in the United States District Court for the District of South Carolina. [Defendants' Exhibit #4, Civil Docket Sheet for 9:06 cv-02048]. Plaintiff's petition was accepted, not dismissed due to technical deficiencies or otherwise, and the Respondent was directed to respond to the petition. [*Id.*]. Plaintiff filed several motions and replies during the course of litigating this petition. [*Id.*]. On June 11, 2007, the Court ruled against Mr. Jackson on the basis that he was not entitled to relief on the merits and because he had previously litigated the core issues raised and lost on the merits. [*Id.*]. The undersigned notes that the Plaintiff <u>never</u> complained to the court, at any time during the course litigating his petition, that the Court that he was being prohibited from effectively litigating his claim. It is only after his claim was dismissed by the Court that he raises these claims in the present civil action.

Here, Plaintiff received a ruling on the merits of his writ. Therefore, his claim of denial of access to the court fails because he has not presented any evidence of actual injury or specific harm which he has suffered. *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996) (dismissal of access to court claim proper where inmate relied on conclusory allegations and failed to identify any actual injury); *Ajaj v. United States*, 479 F.Supp.2d 501, 543 (D.S.C. 2007) (same). Further, Plaintiff's abstract claim that his second petition was inferior to his first does not rise to level of a claim that he has been unlawfully denied access to the courts.

### C. Plaintiff's Allegations of Retaliation

In order to state a retaliation claim, the "plaintiff must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). However, the plaintiff must allege specific facts supporting his claim of retaliation; bare assertions of retaliation do not establish a claim of constitutional dimension. *Id*. The Fourth Circuit has noted that in the prison context, retaliation claims by prisoners should be treated with

skepticism because "[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct." *Cochran*, 73 F.3d at 1317, citing *Adams*, 40 F.3d at 74. The prospect of endless claims of retaliation on the part of inmates would disrupt prison officials in the discharge of their most basic duties. Claims of retaliation must therefore be regarded with skepticism, lest federal courts embroil themselves in every disciplinary act that occurs in a penal institution. *Nasim v. Warden, Maryland House of Correction*, 42 F.3d 1472 (4th Cir. 1995).

Because claims of retaliation have potential for abuse, "in order to state a claim for unconstitutional retaliation, a plaintiff must allege that the retaliatory conduct does not advance legitimate penological goals such as preserving institutional order and discipline." *Abdul-Akbar v. Department of Corrections*, 910 F.Supp. 986, 1001 (D.Del. 1995). Even if a prison official's conduct affects protected rights, courts should defer to the official's decisions which are aimed at protecting internal security and order, so long as they are "reasonably related to legitimate penological interests." *Thornburgh v. Abbott*, 490 U.S. 401, 413 (1989). A plaintiff alleging retaliatory punishment "bears the burden of showing that the conduct at issue was constitutionally protected and that the protected conduct was a substantial or motivating factor in the prison officials" decision to discipline the plaintiff. *Graham v. Henderson*, 89 F.3d 75, 79 (2nd Cir. 1996). The burden then shifts to the defendant to show that the plaintiff would have received the same punishment even absent the retaliatory motivation. *Id.* at 80. The defendant can meet this burden by demonstrating that there is no dispute that the plaintiff committed the most serious, if not all, of the prohibited conduct charged in the misbehavior report. *Hynes v. Squillace*, 143 F.3d 653, 657 (2nd Cir. 1998); *see also Lowrance v. Achtyl*, 20 F.3d 529, 535 (2nd Cir. 1994) (the defendants met their burden when it was undisputed that [the plaintiff] had in fact committed the prohibited conduct).

For an inmate to prove that his rights have been violated, he must show that "each retaliatory act violate[d] some constitutional right of an inmate or constitute[d] punishment

for the exercise of a constitutional right." *See Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 287 (1977). The plaintiff must also show that he "suffered some adversity in response to [his] exercise of protected rights." *Id*. In addition, the plaintiff must demonstrate causation — that the protected conduct was a "substantial" or "motivating factor" in the defendants' decisions. *Id*. If the plaintiff successfully shows causation, the burden shifts to the defendants who must demonstrate that they would have made the same decision in the absence of the plaintiff's protected conduct. *See Id*. Summary judgment is affirmed where prison officials showed no nonretaliatory justification for actions and inmate offered no evidence other than his personal belief that the actions were based on his exercise of his rights. *See Woods v. Edwards*, 51 F.3d 577, 580-81 (5th Cir. 1995).

Defendant LaBier states that Plaintiff was given an incident report because (1) he was informed of obligation of non-indigents to pay for photocopies but he refused to pay for the copies when it was determined he was not indigent, and (2) he was argumentative with LaBier when LaBier tried to work with him on a payment plan. [Defendants' Exhibit #2, ¶8]. LaBier states that he reviewed the BOP policy relating to copying inmate legal documents, and Plaintiff's Inmate Funds Account all of which supported his position that Plaintiff was required to pay for the copies of his legal documents. [*Id*., ¶7]. In addition, even though Defendant Schleder did not find Plaintiff's actions supported a charge of Stealing (Code 219) and Insolence (Code 312), he did find Plaintiff's action constituted Conduct which Disrupts or Interferes with the Security or the Orderly Running of the Institution (Code 399), a lesser included offense. [Defendants' Exhibit #3, ¶5].

Plaintiff's bald assertions that the Defendants retaliated against him for exercising his right to access the court are insufficient as a matter of law. Plaintiff's allegations are conclusory and he has not provided any evidence the Defendants took any form of retaliatory action against him for exercising this right to access to the court. Plaintiff was disciplined for not paying for the 592 pages copies and for his argumentative behavior. The disciplinary

charges were aimed at protecting internal security at the prison and were also reasonably related to legitimate penological interests of providing an orderly, efficient manner in which to provide copies of legal documents to inmates. Plaintiff's conclusory allegations of retaliation, with out factual support, cannot survive the Defendants' motion for summary judgement. *Goldsmith v. Mayor and City Council of Baltimore*, 987 F.2d 1064, 1071 (4th Cir. 1993).

### D.  Plaintiff's Claim of a violation of his Due Process Rights

In *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Supreme Court held that due process is satisfied in prison discipline hearings when the inmate receives a finding from an impartial decision maker, and:

> 1. Advance written notice of the charges;
>
> 2. A conditional opportunity to present documentary evidence and testimony from witnesses; and
>
> 3. A written statement of the evidence relied on and the reasons for the disciplinary action.

*Id*. at 564-66. The Bureau of Prisons rules regarding prison disciplinary procedures are codified at 28 C.F.R. §541.10 et seq. These rules and regulations were written so as to comply with the constitutional requirements of due process in prison discipline matters.

The record of the hearing here shows that the due process requirements of *Wolff* were observed. Plaintiff was given advance written notice of the charges more than 24 hours before the DHO hearing. [Defendants' Exhibit # 5, Incident Report and Exhibit #6, Memorandum Notifying Change of Charge]. Plaintiff was provided with his rights at the discipline hearing. [Defendants' Exhibit #7, Inmate Rights at Discipline Hearing]. Plaintiff was offered the opportunity to present evidence in the form of documents or witnesses and to have the assistance of a staff representative. [Defendants' Exhibit #8, Notice of Discipline Hearing Before the DHO]. The record of the hearing reflects that Plaintiff appeared and made

a statement to the decisionmaker. [Defendants' Exhibit #9, Discipline Hearing Officer Report]. The record of the hearing sets forth the evidence relied upon and the reasons for the decision
and the sanctions imposed. [*Id.*].

Plaintiff contends he was denied due process because Defendant Schleder was not an impartial decision maker. The Defendants assert that Plaintiff's allegation is wholly without merit. Defendant Schleder asserts that as for Plaintiff's allegation that he was not impartial in adjudicating his conduct, he demonstrated his impartiality by reducing the charge from stealing, to a lower prohibited act charge. [Defendants' Exhibit #3, ¶10]. Furthermore, "the requirement of an impartial tribunal prohibits only those officials who have a direct personal or otherwise substantial involvement, such as major participation in a judgmental or decision-making role, in the circumstances underlying the charge." *Meyers v. Alldredge*, 492 F.2d 296, 306 (3rd Cir. 1974); *see also Merritt v. De Los Santos*, 721 F.2d 598, 601 (7th Cir. 1983). Here, Defendant Schleder had no direct personal or otherwise substantial involvement in the circumstances underlying the charge. Defendant Schleder amended the charge of the prohibited act of which Plaintiff was accused, which Defendant Schleder has been given the authority to perform in his official capacity as a DHO. *See* 28 C.F.R. § 541.17(I). Defendant Schleder also asserts he provided Plaintiff with more than sufficient notice of the change of the charge to allow him a sufficient opportunity to present a defense to the charge. [*Id.*, ¶11]. The change of the charge is evidenced in the Notice of Change of Charge, [Defendants' Exhibit #6 and Discipline Hearing Officer Report Exhibit #9].

### E. The Defendants are entitled to qualified immunity from suit.

Individually-named federal defendants sued for money damages for violations of constitutional rights are immune from suit under the doctrine of qualified immunity if, *inter alia*, the complaint fails to allege facts that give rise to the violation of a clearly-established constitutional right. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (government

officials are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known); *see also Mitchell v. Forsyth*, 472 U.S. 511, 526(1985)("[u]nless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery.")  Under the "clearly established" inquiry, a *Bivens* defendant need not demonstrate that the law was specifically established in his favor at the time he acted (i.e., "that a Supreme Court opinion had specifically approved their actions"), but only that the law was unsettled at the time.  *See Zweibon v. Mitchell*, 729 F.2d 162, 173-74 n.19 (D.C. Cir. 1983), *cert. denied*, 469 U.S. 880 (1984).

       The qualified immunity defense in this context is "an immunity from suit rather than a mere defense from liability."  *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).  In recognition of this, the Supreme Court has repeatedly stressed the desirability to resolve the qualified immunity issues at the earliest stage of litigation.  *Hunter v. Bryant*, 502 U.S. 224, 227 (1991). Once a defendant raises qualified immunity, a plaintiff cannot maintain a *Bivens* action against a federal official in his individual capacity unless the plaintiff can prove that the defendant violated a clearly established constitutional right.  *Siegert v. Gilley*, 500 U.S. 226, 231-32 (1991).

       To determine whether the individual defendants here are entitled to qualified immunity, the Court must make a two-step inquiry "in proper sequence."  *Saucier v. Katz*, 533 U.S. 194, 200 (2001).  The Court must first determine whether, "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show [that] the officer's conduct violated a constitutional right."  *Id*. at 201.  If the facts, so viewed, do not establish a violation of a constitutional right, the inquiry ends, and the plaintiff cannot prevail, and the case should proceed no further.  *Id*., *see also Simms v. Bruce*, 104 Fed.Appx. 853, 857, 2004 WL 1595700 (4th Cir. 2004); *Parrish ex rel Lee v. Cleveland*, 372 F.3d 294, 301 (4th Cir.

2004). If the facts do establish such a violation, "the next, sequential step is to ask whether the right was clearly established." *Saucier*, 533 U.S. at 201, *Parrish*, 372 F.3d at 301. This inquiry, it is vital to note, "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier*, 533 U.S. at 201. "If the right was not 'clearly established' in the 'specific context of the case'--that is, if it was not 'clear to a reasonable officer' that the conduct in which he allegedly engaged 'was unlawful in the situation he confronted'--then the law affords immunity from suit.'" *Clem v. Corbeau*, 284 F.3d 543, 549 (4th Cir. 2002) (*quoting Saucier*, 533 U.S. at 201); *see also, Parrish*, 372 F.3d at 301. The ultimate inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *Saucier*, 533 U.S. at 202. A right is "clearly established" if a reasonable officer would have known, under the circumstances of the case at hand, that his actions and behavior violated that right. *Wilson v. Kittoe*, 337 F.3d 392, 402-03 (4th Cir. 2003) ("In determining whether a right was clearly established at the time of the claimed violation, courts in this circuit ordinarily need not look beyond the decisions of the Supreme Court, this court of appeals, and the highest court of the state in which the case arose"). To be clearly established, the right must have been defined "with a high level of particularity." *Id*. at 403, *citing Edwards v. City of Goldsboro*, 178 F.3d 231, 250-51 (4th Cir. 1999).

When the legality of a particular course of action is open to reasonable dispute, then an officer cannot be liable. *Wilson*, 337 F.3d at 403. Under the doctrine of qualified immunity, "officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992); *see also Kirby v. City of Elizabeth City*, 388 F.3d 440, 450-51 (4th Cir. 2004).

As was noted earlier, Plaintiff has not established that the conduct of any defendant violated a constitutional right. Therefore, the Defendants are entitled to qualified immunity.

## RECOMMENDATION

Based on the foregoing, it is recommended that the Defendants' motion for summary judgment **[25] should be granted,** the Plaintiff's Motion for Summary Judgment **[46] should be denied.**

_____
GEORGE C. KOSKO
UNITED STATES MAGISTRATE JUDGE

February 12, 2008

Charleston, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail.  Fed. R. Civ. P. 6(a) & (e).  Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> P.O. Box 835
> Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).